**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| INTEGRA HEALTHCARE, S.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18 C 3589 |
| ) | |
| APP of ILLINOIS HM, PLLC, and AMBER ) | Judge Rebecca R. Pallmeyer |
| SERVATIUS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Dr. Sachin Jain operates Plaintiff Integra Healthcare, S.C., a corporation that "provide[s] healthcare services"—that is, physician staffing—to hospitals and nursing homes. Defendant APP of Illinois HM, PLLC, is engaged in a similar business. Physicians employed by both parties, including Dr. Jain and Defendant Dr. Amber Servatius, who works for APP, perform work as "hospitalists," meaning that they provide primary care to hospitalized patients. In this lawsuit, Integra alleges that Defendant APP, through a medical director, Defendant Dr. Servatius, has interfered with Integra's contractual right to provide physician services at Vista Medical Center East ("VMCE"), a hospital in Waukegan, Illinois, and to receive patient referrals from skilled nursing facilities. This court has diversity jurisdiction under 28 U.S.C. § 1332.[1]

In its First Amended Complaint, Integra has asserted the following claims: tortious interference with prospective economic advantage against Dr. Servatius (Count I); tortious interference with prospective economic advantage against APP (Count II); negligence against Dr.

---

[1] Integra is an Illinois corporation. (*See* First Amended Complaint [40] ¶ 4.) Dr. Servatius resides in Wisconsin. (*Id.* ¶ 6; *see also* Servatius Decl. [13].) At a hearing on Integra's motion for a temporary restraining order, Defendants confirmed that APP's sole member is Tony Briningstool, a Tennessee resident. (*See* APP Local Rule 3.2 Notification as to Affiliates [17]; *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) ("[T]he citizenship of an LLC for purposes of . . . diversity jurisdiction is the citizenship of its members.").)

Servatius (Count III); "*respondeat superior*" against APP (Count IV); "willful and wanton" against Dr. Servatius (Count V); "willful and wanton" against APP (Count VI); negligent hiring against APP (Count VII); negligent retention against APP (Count VIII); and negligent supervision against APP (Count IX). Defendant APP has moved to dismiss all claims; Defendant Dr. Servatius, represented by the same attorneys, has moved only for partial dismissal of Count I. (*See* Servatius Mot. to Dismiss [51] ("Servatius Mot."), 1 (moving to dismiss Count I to the extent it is "based on alleged interference with Integra's patients at" VMCE).) She has also moved to dismiss Counts III and V. (*See id.*)

For the following reasons, the court dismisses Integra's negligence-based claims. The court denies the motions to dismiss in all other respects.

## BACKGROUND

### A. Dr. Jain's and Dr. Servatius' Employment at VMCE

VMCE is part of a network called Vista Health System ("VHS"). (*See* First Am. Compl. ¶¶ 10-11.) VHS contracts with companies like APP to staff physicians at its hospitals, including VMCE. (*See id.* ¶ 12.) Between January 2012 and August 2014, VHS contracted with a company called Apogee Physicians to staff physicians at VMCE. (*See id.* ¶ 13.) The court infers from Integra's allegations that Dr. Jain began working at VMCE in April 2013, when Apogee placed him there. (*See id.* ¶ 14.) In September 2014, EmCare replaced Apogee as VHS's staffing contractor for VMCE, and Dr. Jain continued working at the facility. (*Id.* ¶¶ 16-17.) Then in November 2016, APP replaced EmCare as VHS's staffing contractor for VMCE. (*Id.* ¶ 18.) Dr. Jain continued working at VMCE after this change, but "not [as] part of APP's hospitalist team." (*Id.* ¶¶ 20-21.) Although the First Amended Complaint does not otherwise explain this, the court assumes that Dr. Jain is staffed at VMCE through his own company, Integra.

"APP's hospitalists have an exclusive agreement with VMCE that they will treat [emergency room] patients that are admitted into the hospital" and do not have primary care physicians (hereinafter "ER patients"). (*Id.* ¶ 20.) Despite this exclusive agreement, in November

2

2016, VMCE's Medical Executive Committee "granted [Dr.] Jain the right to see" such patients once every two weeks. (*Id.* ¶ 21.) Nine months later, the Medical Executive Committee altered the arrangement and "granted [Dr.] Jain the right to see" such patients once every thirty-two days. (*Id.* ¶ 22.)

As noted, Dr. Servatius also works as a hospitalist at VMCE. She and Dr. Jain have "worked alongside each other as hospitalists at VMCE" at "all relevant times." (*Id.* ¶ 19.) Since November 2016, Dr. Servatius has worked as the medical director of APP's hospitalist team at the facility. (*Id.* ¶¶ 21, 23.)

**B.     Alleged Interference with Dr. Jain's Ability to Treat Patients at VMCE**

According to Integra, Dr. Servatius' duties as medical director at some point included creating the call schedule for doctors on APP's hospitalist team. (*Id.* ¶ 23.) Integra alleges that Dr. Servatius manipulated the schedule to interfere with Dr. Jain's "right" to see ER patients. (*Id.* ¶¶ 21, 23.) By Integra's account, Dr. Servatius created schedules that permitted Dr. Jain to see only seventy-five percent "of the patients that were supposed to be under his care . . . ." (*Id.* ¶ 23.) Integra also alleges that on at least one occasion, in September 2017, Dr. Servatius "took [Dr.] Jain off the call completely and deprived him of his right to see any of th[e] patients that were supposed to be under his care." (*Id.* ¶ 24.) "Subsequently," Integra alleges, "the VMCE Medical Executive Committee permanently stripped [Dr.] Servatius of the right to create the call schedule." (*Id.* ¶ 25.) Integra further alleges that "[a]t other times," "APP and/or [Dr.] Servatius directed and/or allowed other doctors from the hospitalist group" to treat patients that were "supposed to be under [Dr. Jain's] care." (*Id.* ¶ 26.) When this occurred, Integra alleges, "APP would receive the revenues instead of Integra." (*Id.* ¶ 27.)

**C.     Alleged Interference with Dr. Jain's Ability to Receive Skilled Nursing Referrals**

According to Integra, it had "formal contracts" with certain entities to "treat their patients," and this "upset" Dr. Servatius. (*Id.* ¶¶ 28, 30, 31.) Integra provides specific references to only three contracts. The first is a November 11, 2016 letter from Dr. Xavier Parreno stating, "I would

3

like Dr. Sachin Jain, MD to exclusively cover my patients at [VMCE] when they are hospitalized as inpatients." (Ex. A to First Am. Compl. [40-1]; First Am Compl. ¶ 32 (citing same).) The second contract is a November 11, 2016 letter from Orchard Medical Center ("Orchard") stating that it would "be using Dr. Sachin Jain as [its] exclusive hospitalist [at VMCE] effective November 19th at midnight." (Ex. B to First Am. Compl. [40-2]; First Am. Compl. ¶ 34 (citing same).) The third contract is an undated "Physician Coverage Agreement" with Lake County Health Department and Community Health Center ("Lake County"). (Ex. C to First Am. Compl. [40-3]; First Am. Compl. ¶ 36 (citing same).)[2] The agreement authorized Dr. Jain "to provide medical services to [Lake County's] patients admitted for medical care at" VMCE. (Ex. C to First Am. Compl.) According to Integra, Dr. Servatius "interfered" with the Dr. Parreno contract "such that [Dr. Parreno] canceled [it]." (First Am. Compl. ¶ 33.) Integra also alleges that "[Dr.] Servatius and/or APP interfered" with the Orchard and Lake County contracts by "direct[ing] and/or allow[ing]" hospitalists other than Dr. Jain to see Orchard and Lake County patients at VMCE. (*Id.* ¶¶ 35, 37.)

In addition, Integra alleges that Dr. Servatius "made several phone calls to physicians in the community, made disparaging and false comments about [Dr.] Jain, and otherwise interfered with his business contracts and relations with [them] in an attempt to get them to stop sending Integra referrals." (*Id.* ¶ 28; *see also id.* ¶ 29 (asserting similar allegation concerning phone calls to skilled nursing facilities).) It is unclear whether the allegations in paragraphs 28 and 29 refer to Dr. Parreno, Orchard, and Lake County; to other physicians or entities; or to all of the above. Integra further alleges that Dr. Servatius "directly threatened various skilled nursing facilities, including but not limited to GlenLake Terrace, the Pavilion of Waukegan, and Rolling Hills, to not refer patients to Integra if they wanted to receive patient referrals from VMCE." (*Id.* ¶ 38.)

---

[2] A representative of Lake County signed the agreement on February 7, 2018. (*See id.*) Dr. Jain purportedly signed the agreement two years earlier on February 8, 2016. (*See id.*) It is unclear whether one of these dates is an error.

4

Integra alleges that Dr. Servatius and/or APP undertook the aforementioned conduct intentionally and with malice. (*See id.* ¶ 40.) It also alleges that the conduct caused Integra "financial harm, loss of reputation, and emotional distress." (*See, e.g.*, *id.* ¶ 42.) Integra seeks compensatory and punitive damages.

## **DISCUSSION**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g.*, *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); FED. R. CIV. P. 12(b)(6). "The complaint need only contain a short and plain statement of the claim demonstrating entitlement to relief." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016); *see* FED. R. CIV. P. 8(a)(2). "Although detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing a Rule 12(b)(6) motion, the court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Hutchinson v. Fitzgerald Equip. Co.*, 910 F.3d 1016, 1025 (7th Cir. 2018). The parties agree that Illinois law governs the substantive claims in this diversity action.

### A. Negligence

Defendants move to dismiss Integra's negligence-based claims on the ground that they are barred by Illinois' economic loss rule. Under that rule, also known as the *Moorman* doctrine, a plaintiff "cannot recover for solely economic loss under the tort theories of strict liability, negligence, and innocent misrepresentation." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 91, 435 N.E.2d 443, 453, 61 Ill. Dec. 746, 756 (1982). In *Moorman*, the Illinois Supreme Court defined "economic loss" as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits-without any claim of personal injury or damage to other property." 91 Ill.2d at 82, 435 N.E.2d at 449, 61 Ill. Dec at 752. The *Moorman* doctrine

is based on the theory that tort law provides the appropriate remedy for losses stemming from personal injury or damage to property, whereas contract law and the Uniform Commercial Code provide the appropriate remedy for "economic losses occasioned by diminished commercial expectations not coupled with injury to person or property." *In re Illinois Bell Switching Station Litig.*, 161 Ill.2d 233, 241, 641 N.E.2d 440, 444, 204 Ill. Dec. 216, 220 (1994).

### 1. Whether Integra Seeks to Recover Purely Economic Losses

Integra claims that Defendants' negligence caused it to suffer "lost revenue, harm to reputation, and emotional distress." (First Am. Compl. ¶¶ 73, 78, 82, 86, 98, 109, 123.) Integra does not dispute that lost revenue and harm to reputation are considered economic losses. (*See* Integra Opp. to Defs.' Mot. to Dismiss [54] ("Integra Opp."), 2-4; *see also Cloverhill Pastry-Vend Corp. v. Cont'l Carbonics Prods., Inc.*, 214 Ill. App. 3d 526, 530, 574 N.E.2d 80, 83, 158 Ill. Dec. 286, 289 (1st Dist. 1991) ("[D]amage to reputation" is "purely economic").) And although "emotional distress damages are noneconomic," *Saleh v. Merchant*, No. 14-CV-09186, 2018 WL 287748, at *9 (N.D. Ill. Jan. 4, 2018), Integra has not stated a claim for emotional distress damages. For one thing, Integra has cited no authority for the proposition that a corporation can suffer emotional distress. And as Defendants point out, numerous courts have rejected this proposition. *See, e.g.*, *Fed. Deposit Ins. Co. v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994) (affirming dismissal of claim for intentional infliction of emotional distress against corporation because "a corporation lacks the cognizant ability to experience emotions" and thus "cannot suffer emotional distress").

For another, under Illinois law, "a direct victim may not recover for emotional distress suffered as a result of the defendant's alleged negligence unless the emotional distress 'was accompanied by a contemporaneous physical injury to or impact on the plaintiff.'" *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 703 (7th Cir. 2009) (quoting *Rickey v. Chicago Transit Auth.*, 98 Ill.2d 546, 550, 457 N.E.2d 1, 2, 75 Ill. Dec. 211, 212 (1983)); *see also Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041 ¶ 40, 77 N.E.3d 50, 60, 412 Ill. Dec. 882, 892 (citing *Lewis*, 561 F.3d

at 703, with approval). Even assuming that a corporation can suffer emotional distress—and even if Dr. Jain himself were named as a Plaintiff in this case—the impact rule would doom this claim because there is no allegation that the alleged emotional distress occurred contemporaneously with a "physical injury to or impact on" Integra or Dr. Jain. *Lewis*, 561 F.3d at 703. Instead, Integra appears to contend that it need not show a contemporaneous injury or impact to recover emotional distress damages. (*See* Integra Opp. 4.) But *Martin v. Wal-Mart Stores, Inc.*, No. 07 C 3458, 2007 WL 3231414 (N.D. Ill. Oct. 26, 2007), the only case Integra cites for this proposition, does not support it. In *Martin*, the court did not squarely address the "impact" requirement. *See generally id.* Moreover, *Martin* pre-dates *Lewis*. Courts assessing claims for emotional distress damages after *Lewis* have applied the impact requirement to direct victims of negligence. *See, e.g.*, *Saleh*, 2018 WL 287748, at *9. To the extent that *Martin* is inconsistent with these cases, this court respectfully declines to follow it.

For the foregoing reasons, the court concludes that Integra seeks solely economic damages. The court, therefore, must determine whether any exceptions to the *Moorman* doctrine apply to Integra's negligence claims. As discussed below, the court concludes that none of the exceptions is applicaple.

**2. Whether Exceptions to the *Moorman* Doctrine Apply to Integra's Negligence Claims**

The Illinois Supreme Court has traditionally recognized three exceptions to the *Moorman* doctrine:

> (1) where the plaintiff sustained damage, *i.e., personal injury or property damage,* resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.,* fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions.

*In re Chicago Flood Litig.*, 176 Ill. 2d 179, 199, 680 N.E.2d 265, 275, 223 Ill. Dec. 532, 542 (1997) (internal citations omitted). The Illinois Supreme Court has also stated that the *Moorman* doctrine

7

applies to "the service industry only where the duty of the party performing the service is defined by the contract that he executes with his client. Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 162, 636 N.E.2d 503, 514, 201 Ill. Dec. 71, 82 (1994).

### a. Extracontractual Duties

Integra contends that the *Moorman* doctrine is inapplicable to its negligence claims because Defendants owed and breached "extracontractual" duties. (*See* Integra Opp. 2 (quoting *Congregation of the Passion*, 159 Ill. 2d at 164, 636 N.E.2d at 515, 201 Ill. Dec. at 83).) In this regard, Integra maintains that because it was never party to a contract with Defendants, the duties underlying its negligence claims "exist[] independently of any contract between them." (*Id.*) Integra has not explained the source of these purported duties, however, and *Congregation of the Passion* does not support its argument. In that case, the Illinois Supreme Court observed that accountants, like attorneys, provide professional services to their clients pursuant to contracts, but have a "duty to observe reasonable professional competence" that "exists independently of any contract." 159 Ill. 2d at 163-64, 636 N.E.2d at 515, 201 Ill. Dec. at 83. The court held that the economic loss doctrine "does not bar recovery in tort" for an accountant's breach of that "extracontractual" duty. *Id.*

Here, the alleged relationship between Integra and the Defendants is unlike an attorney-client or accountant-client relationship. The Defendants do not work for Integra; Integra alleges to the contrary that Defendants are Integra's competitors. In this context, Integra's allegations that Defendants owe it certain duties are contrived. (*See, e.g.*, First Am. Compl. ¶¶ 70, 75, 79, 83, 94, 107, 118 (alleging that Defendants owed Integra duties to "exercise ordinary care so as not to unlawfully interfere with [its] business arrangements"; "not hire and employ individuals it knew or should have known were unfit for the position of Medical Director of the APP hospitalist team at VMCE"; "retain only competent and qualified employees that did not cause harm to

8

others"; and "supervise [Dr.] Servatius' performance as Medical Director to ensure that other doctors and healthcare providers at VMCE would be free from harm and injury").) The court declines Integra's suggestion that it impose on Defendants some ill-defined extracontractual duty to exercise "reasonable professional competence" in favor of another medical service provider. *Cf. Congregation of the Passion*, 159 Ill. 2d at 163-64, 636 N.E.2d at 515, 201 Ill. Dec. at 83; *see Gondeck v. A Clear Title & Escrow Exch.*, 47 F. Supp. 3d 729, 748 (N.D. Ill. 2014) ("The key to *Congregation of the Passion* . . . is the professional relationship under which an accountant provides services to her client, which the Supreme Court of Illinois likened to the professional relationship under which an attorney provides services to her client."); *Dahm v. First Am. Title Ins. Co.*, No. 06 C 5031, 2008 WL 1701901, at *3 (N.D. Ill. Apr. 9, 2008) ("Illinois courts have allowed tort recovery against attorneys and accountants based on an 'extra-contractual duty' theory. . . . However, beyond that narrow range of professionals, courts have not imposed an extra-contractual duty . . . and have held that the *Moorman Doctrine* applies to bar various tort claims.").

To the extent Integra is arguing that it can recover economic losses in tort merely because it never had a contract with Defendants, again, the court is not persuaded. To the contrary, the *Moorman* doctrine bars "[r]ecovery in tort for disappointed commercial expectations due to breach of implied duties and warranties between non-contracting parties." *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003); *see also Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 817 (7th Cir. 2018) (rejecting plaintiff's argument that an extracontractual duty attaches merely "because there is no direct contract between th[e] parties"); *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill.2d 351, 417-18, 423, 821 N.E.2d 1099, 1140, 1143, 290 Ill. Dec. 525, 566, 569 (2004) (determining that the *Moorman* doctrine barred plaintiffs' claims despite absence of a contractual relationship).

Invoking *Congregation of the Passion*, Integra separately argues that "even if [it] had a contractual relationship" with Defendants, Defendants would owe duties that arose outside of that relationship. (Integra Opp. 2.) Specifically, according to Integra, Defendants owed (and

9

breached) duties to (1) follow VMCE's directive that allows Dr. Jain to see ER patients, and (2) "honor the informed consent of patients . . . admitted to VMCE that were supposed to be under [Dr. Jain's] exclusive care." (*Id.*)  But assuming such duties exist, they are unlike the independent duties of accountants and attorneys to exercise "reasonable professional competence." *Congregation of the Passion*, 159 Ill. 2d at 163-64, 636 N.E.2d at 515, 201 Ill. Dec. at 83.  The court notes, further, that the duties Integra has identified run to VMCE or to patients, not to Integra. Setting aside the *Moorman* doctrine, Integra cannot prevail on a negligence claim based on duties owed to third parties.  *See, e.g.*, *Lewis*, 561 F.3d at 702 ("To establish a valid claim for negligence" in Illinois, "a party must demonstrate that the defendant owed *him* a duty" (emphasis added)).  For these reasons, Integra's attempt to escape the application of the *Moorman* doctrine by invoking "extracontractual" duties is unavailing.

### b.     Other Arguments

In another effort to evade the *Moorman* doctrine, Integra argues that the negligence claims here fall under the exception to that doctrine for negligent misrepresentations made by defendants in the "business of supplying information."  *In re Chicago Flood Litig.*, 176 Ill. 2d at 199, 680 N.E.2d at 275, 223 Ill. Dec. at 542.  Under this theory, Integra argues that Defendants supply information to guide third parties in their business transactions and did so negligently by ordering other doctors to treat Dr. Jain's patients and interfering with Integra's skilled nursing referrals.  (*See* Integra Opp. 3 (citing First Am. Compl. ¶ 71(b)-(f)).)  The court concludes the exception for negligent misrepresentations is inapplicable here.  First, these alleged intentional acts do not support a claim for damages "proximately caused *by a negligent misrepresentation*."  *In re Chicago Flood Litig.*, 176 Ill. 2d at 199, 680 N.E.2d at 275, 223 Ill. Dec. at 542 (emphasis added).  More importantly, at least one Illinois court has determined that where a company is in the business of "supply[ing] . . . skilled individual[s]," it is "not in the business of supplying information within the meaning of the exception . . . ."  *Fox Assocs., Inc. v. Robert Half Int'l, Inc.*, 334 Ill. App. 3d 90, 97, 777 N.E.2d 603, 609, 267 Ill. Dec. 800, 806 (1st Dist. 2002).  The court reached this conclusion

because the "ultimate result" of the relationship between the company and its client was a "tangible product, a skilled person, not intangible analysis or ideas." *Id.* Like the company in *Fox*, APP's business is to supply skilled professionals (medical staff) to medical facilities. Integra's cited case about pharmacy benefit managers is inapposite because APP is not a PBM. (*See* Integra Opp. 3 (citing *Hotel Emps. & Rest. Emps. Int'l Union Welfare Fund v. Sav-Rx*, No. 07 C 0916, 2007 WL 1423863, at *3 (N.D. Ill. May 10, 2007) (where plaintiff alleged that it "made payments for prescriptions . . . in reliance on information that [defendant PBMs] provided in their roles as managers of [plaintiff's] pharmacy benefits plan," plaintiff sufficiently pleaded that defendant PBMs were in the business of supplying information for purposes of the exception)).)

Next, Integra argues that it has alleged property loss coupled with economic losses. (*See* Integra Opp. 3.) According to Integra, it lost patients due to Defendants' negligence. Lost patients, Integra continues, are like the lost "inventory" in *In re Chicago Flood Litigation*, for which the court allowed recovery in tort. 176 Ill. 2d at 201-02, 680 N.E.2d at 276, 223 Ill. Dec. at 543. Integra misunderstands *In re Chicago Flood Litigation*. In that case, the court determined that the *Moorman* doctrine did not foreclose plaintiffs' claims for "lost perishable inventory as a result of interrupted electrical service." *Id.* The court reasoned that plaintiffs' claims were for "property loss, in the form of lost perishable injury, as a result of a tortious event" and that "[s]uch damages [were] above and beyond [the] plaintiffs' disappointed commercial expectation in continuous electrical service." *Id.* Integra's allegations lack these features. The contention that Integra "lost" patients merely repackages the contention that it lost revenue due to Defendants' alleged interference. Integra's label aside, its complaint seeks only to recover economic losses for defeated commercial expectations.

Finally, Integra contends that the *Moorman* doctrine does not bar its negligence claims because "open-ended tort liability" is not a risk in this case. (Integra Opp. 3-4 (quoting *In re Chicago Flood Litig.*, 176 Ill. 2d at 207, 680 N.E.2d at 278, 223 Ill. Dec. at 545).) This argument does not alter the analysis. Allowing Integra to recover its economic losses in tort would

11

undermine the purposes and legitimacy of the *Moorman* doctrine, regardless of whether open-ended tort liability is a concern on the particular facts of this case.

The court concludes that the *Moorman* doctrine forecloses Integra's negligence-based claims (Counts III, VII, VIII, and IX), and therefore dismisses them. Because Integra concedes that its "claims" for "*respondeat superior*" and "willful and wanton" are derivative of the negligence claims, the court dismisses those claims as well (Counts IV, V, VI). (*See* Integra Opp. 1 (stating that it "incorporates [its negligence allegations] by reference in its 'willful and wanton' claims, and therein includes allegations of escalated forms of negligence"); *id.* at 2 (stating that it "pleads *respondeat superior* as a theory of recovery . . . aimed at APP for the negligent conduct of its agents").)[3]

## B. Tortious Interference with Prospective Economic Advantage

Integra asserts claims for tortious interference with prospective economic advantage against both Defendants. At least from a pleading perspective, these claims have more traction. To prevail on these tortious interference claims under Illinois law, Integra must prove: "(1) [its] reasonable expectation of entering into a valid business relationship; (2) the [Defendants'] knowledge of [Integra's] expectancy; (3) purposeful interference by the [Defendants] that prevents [Integra's] legitimate expectancy from ripening into a valid business relationship; and (4) damages to [Integra] resulting from such interference." *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511, 568 N.E.2d 870, 878, 154 Ill. Dec. 649, 657 (1991); *see also, e.g.*, *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009).

### 1. Defendant APP (Count II)

#### a. Interference with Dr. Jain's Treatment of Patients at VMCE

Integra's tortious interference claim against APP is based in part on alleged interference

---

[3] The court also notes that Integra's negligence claims make little sense because Integra alleges that Defendants' conduct was intentional.

"with [Dr.] Jain's ability to treat patients at VMCE." (First Am. Compl. ¶ 61.) There are two types of patients at issue: ER patients that VMCE allows Dr. Jain to see periodically (*id.* ¶¶ 20-22), and patients that Dr. Jain has the exclusive right to see under contracts with Dr. Parreno, Orchard, and Lake County (*see id.* ¶¶ 32-37.)[4] Integra alleges that APP's interference occurred "through its employees/agents, including but not limited to [Dr.] Servatius." (*See, e.g., id.* ¶¶ 61-62.)

In its opening brief, APP addresses only alleged interference with ER patients. APP asks the court to dismiss this claim based on the competitor's privilege. The competitor's privilege "is an affirmative defense to the tort of intentional interference with prospective business advantage." *Gen. Motors Corp. v. State Motor Vehicle Review Bd.*, 224 Ill. 2d 1, 15, 862 N.E.2d 209, 220, 308 Ill. Dec. 611, 622 (2007). It allows competitors "to interfere with one another's prospective business relationships provided their intent is, at least in part, to further their businesses and is not solely motivated by spite or ill will." *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 392, 882 N.E.2d 1011, 1019, 317 Ill. Dec. 855, 863 (2008). The privilege "does not, however, encompass the use of improper competitive strategies that employ fraud, deceit, intimidation, or deliberate disparagement." *Id.* Because the competitor's privilege is an affirmative defense, a "[c]omplaint[] need not anticipate or attempt to defuse" it. *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). "[I]n some cases," however, "a complaint so clearly

---

[4] The allegations concerning interference with patients from Dr. Parreno, Orchard, and Lake County are confusing. Integra originally raises them in a section of its First Amended Complaint titled "Interference with . . . patient referrals from skilled nursing facilities." (First Am. Compl. 4.) But some allegations in that section, as well as in other portions of the First Amended Complaint, suggest that Defendants not only interfered with referrals from those providers, but also with Dr. Jain's ability to treat those providers' patients when they were actually admitted to VMCE. (*See id.* ¶¶ 34-37, 39, 49, 56, 62, 66.) Furthermore, in its briefing, Integra states that its claims concerning interference with patient treatment include interference with Dr. Parreno, Orchard, and Lake County's patients. (*See* Integra Opp. 6.) The court, therefore, treats allegations concerning Dr. Parreno, Orchard, and Lake County as relevant to alleged interference with patient treatment *and* alleged interference with skilled nursing referrals. Separately, the court notes that Dr. Jain's contract with Lake County does not appear to be exclusive. (*See generally* Ex. C to First Am. Compl.) But because Defendants do not raise this issue in their briefing, the court will, for present purposes, assume that the contract is exclusive.

reveals the existence of the defense that judgment on the pleadings is possible." *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 731 (7th Cir. 1999).

APP argues that Integra's pleadings establish the competitor's privilege defense. APP characterizes the First Amended Complaint as alleging that APP and Integra compete directly for the ER patients at issue. (APP Mem. in Supp. of Mot. to Dismiss [50] ("APP Mot."), 9 (citing First Am. Compl. ¶ 20).) APP also characterizes the complaint as alleging that APP's "motivation for interfering was to 'receive . . . revenues instead of Integra.'" (*Id.* (quoting First Am. Compl. ¶ 27).) These allegations, APP maintain, show that if APP interfered with Dr. Jain's treatment of ER patients, it did so "at least in part[] to further [its] business[]." (*Id.* (quoting *Imperial Apparel*, 227 Ill. 2d at 392, 882 N.E.2d at 1019, 317 Ill. Dec. at 863).)

Integra responds that APP mischaracterizes its allegations and that dismissal based on the competitor's privilege is unwarranted at this stage. The court agrees that Integra's complaint does not "clearly reveal[] the existence of" the privilege. *Int'l Mktg.*, 192 F.3d at 731. Integra and APP certainly appear to be competitors in the sense that both employ hospitalists who treat ER patients at VMCE. In arguing that Integra's pleadings identify a business-related purpose for APP's alleged interference, however, APP points to only one paragraph of the First Amended Complaint. That paragraph states, "When APP doctors saw patients that were supposed to be under [Dr.] Jain's care, APP would receive the revenues instead of Integra." (First Am. Compl. ¶ 27.) Viewed in the light most favorable to Integra, this allegation can reasonably be interpreted as pleading only that APP received additional revenue as a result of the interference—not that APP's sole purpose in interfering was to increase its own revenue.

Integra also alleges that APP interfered "with malice." (First Am. Compl. ¶ 65.) APP appears to contend that Integra's malice-related pleadings are insufficient because they are based only on Dr. Servatius' conduct. (*See* APP Reply [55], 9-10.) According to APP, the allegedly malicious conduct was outside the scope of Dr. Servatius' employment with APP, including because it was "solely for [her] benefit." (*See* APP Reply 9-10 (quoting *Dennis v. Pace*

14

*Suburban Bus Serv.*, 2014 IL App (1st) 132397, ¶ 12,19 N.E.3d 85, 90, 385 Ill. Dec. 527, 532).) APP suggests that it is not liable for such conduct. (*See* APP Reply 9-10; *see also, e.g.*, *Adames v. Sheahan*, 233 Ill. 2d 276, 298, 909 N.E.2d 742, 754, 330 Ill. Dec. 720, 733 (2009) ("Pursuant to the theory of *respondeat superior*, an employer can be held liable for the torts of his employee when those torts are committed within the scope of the employment.").) The court is unwilling to entertain this argument because elsewhere in its briefing, APP concedes that at least some of Dr. Servatius' conduct—specifically, "her role in creating the call schedule at VMCE"—was within the scope of her employment. (APP Mot. 10 n.6.) Furthermore, the same attorneys represent both APP and Dr. Servatius in this matter. The court will not entertain an argument from Dr. Servatius' attorneys that is adverse to her own interests. The court concludes that Integra has sufficiently pleaded malice for purposes of defeating the competitor's privilege.

Because Integra sufficiently pleads malice and does not clearly plead that APP interfered with the intent to further its business, this case is distinguishable from *International Marketing*, which APP cites. There, the court determined that the competitor's privilege "appear[ed] on the face of the complaint" because plaintiff (1) alleged that defendants interfered so that they "could deal directly with [the customer]," and (2) did not sufficiently allege "ill will or spite." 192 F.3d at 732. Integra's case is also distinguishable from *Essex Real Estate Grp., Ltd. v. River Works L.L.C.*, No. 01 C 5285, 2002 WL 1822913, at *8 (N.D. Ill. Aug. 7, 2002), also cited by APP, because in that case, unlike this one, plaintiff "fail[ed] to make any allegations that Defendant . . . was motivated by spite or ill will." The court denies APP's motion to dismiss based on the competitor's privilege.

In its reply, APP separately contends that the court should dismiss Integra's tortious interference claim to the extent it is based on alleged interference with Dr. Jain's treatment of Dr. Parreno, Orchard, and Lake County patients. (*See* APP Reply 8-9.) APP notes that patients have the right to choose their own physician and that Integra has not alleged that APP interfered with any patient's decision to choose Dr. Jain. APP concludes that Integra has failed to allege an

15

essential element of its claim: that APP interfered with the prospective economic advantage Integra may have had under its contracts with Dr. Parreno, Orchard, and Lake County. (*See id.* at 9.) Because APP makes this argument for the first time on reply, it is waived. *See Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 636 (7th Cir. 2018). In any event, viewing the First Amended Complaint in the light most favorable to Integra, it is reasonable to infer that some of Dr. Parreno, Orchard, and Lake County's patients are admitted to VMCE but do not request a specific hospitalist. By assigning other hospitalists to such patients, who are supposed to be under Dr. Jain's exclusive care, APP could plausibly interfere with Integra's prospective economic advantage. Integra alleges that APP did just this.

For the reasons just discussed, Integra has sufficiently alleged that APP interfered with Dr. Jain's ability to treat patients at VMCE. And APP does not dispute that Integra has sufficiently alleged the other elements of its claim: that Integra reasonably expected to treat patients under arrangements it had with VMCE and other providers; that APP, through its employees or agents, had knowledge of those arrangements; and that Integra suffered damage as a result of Defendants' interference. *See Fellhauer*, 142 Ill. 2d at 511, 568 N.E.2d at 878, 154 Ill. Dec. at 657. Accordingly, the court denies APP's motion to dismiss the tortious interference claim to the extent it is based on interference with Dr. Jain's treatment of patients at VMCE.

### b. Interference with Referrals from Skilled Nursing Facilities

Integra also asserts a claim against APP for tortious interference with prospective economic advantage based on alleged interference with Integra's referrals from skilled nursing facilities. As the court understands the First Amended Complaint, the skilled nursing facilities include Dr. Parreno, Orchard, and Lake County, as well as GlenLake Terrace, the Pavilion of Waukegan, and Rolling Hills. (*See, e.g.*, First Am. Compl. ¶¶ 38, 48, 56, 62.) A major difference between the two types of tortious interference claims that Integra asserts, therefore, is the manner of interference alleged: for purposes of the claim concerning skilled nursing referrals, Integra alleges that APP interfered only by making disparaging comments about Dr. Jain to, and

threatening, skilled nursing facilities. (*See, e.g., id.* ¶¶ 28-38.) As to the elements of the claim, Integra alleges that it reasonably expected to receive referrals from the facilities; APP, through its employees and agents, knew of that expectancy; APP, through its employees and agents, interfered with that expectancy; and Integra suffered resultant damage. (*See, e.g.*, First Am. ¶¶ 28-29, 38, 46, 48, 50-51, 56, 62-64, 68.)

APP contends that "Integra limits the allegations in connection with this claim to conduct performed exclusively by Dr. Servatius." (APP Mot. 10.) APP maintains that Dr. Servatius' conduct was outside the scope of her employment and thus that APP cannot be held liable for it under the doctrine of *respondeat superior*. (*See id.* at 10-15.) The court agrees that Integra's allegations for purposes of this claim concern only Dr. Servatius. Namely, the First Amended Complaint identifies only Dr. Servatius as having made disparaging comments and threats to skilled nursing facilities. Nonetheless, APP cannot dodge liability for Dr. Servatius' conduct. As the court has previously explained, it is unwilling to entertain any argument from Dr. Servatius' own lawyers that her conduct was outside the scope of her employment. And APP does not argue that Integra's allegations are insufficient in any other respect. Accordingly, the court denies APP's motion to dismiss this claim.

2. **Defendant Dr. Servatius (Count I)**

a. **Interference with Dr. Jain's Treatment of Patients at VMCE**

Integra also brings a tortious interference claim against Dr. Servatius in her individual capacity based on alleged interference with Dr. Jain's treatment of VMCE patients. (*See, e.g.*, First Am. Compl. ¶¶ 49-51.) According to Integra, Dr. Servatius knew that Dr. Jain had the right to treat ER patients under an arrangement with VMCE and that he also had the right to treat patients from Dr. Parreno, Orchard, and Lake County under contracts with those providers. (*See id.* ¶¶ 23-24, 31-37, 49-50.) Integra alleges that Dr. Servatius interfered with Dr. Jain's "reasonable expectancy of treating" these patients by manipulating APP's call schedule and seeking "guidance from other physicians as to how she could avoid assigning patients to [Dr.]

Jain." (*Id.* ¶¶ 23-24, 39, 49.) Finally, Integra alleges that it suffered damage as a result of Dr. Servatius' interference. (*See id.* ¶ 55.) Integra has sufficiently alleged the essential elements of a claim for tortious interference with prospective economic advantage. *See Fellhauer*, 142 Ill. 2d at 511, 568 N.E.2d at 878, 154 Ill. Dec. at 657.

Dr. Servatius moves to dismiss this claim but refers the court only to APP's briefing. (*See* Servatius Mot. 1.) APP, for its part, relies solely on the competitor's privilege in moving to dismiss the claim against Dr. Servatius. Specifically, APP argues that if the court dismisses the parallel claim against APP based on the privilege, the court should likewise dismiss the claim against Dr. Servatius because she was acting within the scope of her employment. (*See* APP Mot. 10 n.6.) Because APP is not entitled to dismissal based on the competitor's privilege, this argument lacks merit. Accordingly, the court denies Dr. Servatius' motion to dismiss this claim.

### b. Interference with Referrals from Skilled Nursing Facilities

Finally, Integra brings a tortious interference claim against Dr. Servatius in her individual capacity based on alleged interference with Dr. Jain's ability to receive patient referrals from skilled nursing facilities. (First Am. Compl. ¶ 48.) Dr. Servatius has not moved to dismiss this claim (*see* Servatius Mot. 1), wisely, in the court's view, because Integra sufficiently alleges every element of the claim. Specifically, Integra alleges that it "had a reasonable expectancy of entering into a valid business relationship" with the skilled nursing facilities; Dr. Servatius "had knowledge of said business expectancies"; Dr. Servatius "interfered with said business expectancies," including by threatening the facilities and making disparaging remarks about Dr. Jain; Dr. Servatius' interference "caused a breach or termination of" Integra's business expectancies with the facilities; and Integra suffered damage as a result. (First Am. Compl. ¶¶ 29, 38, 48, 50-51, 55; *see Fellhauer*, 142 Ill. 2d at 511, 568 N.E.2d at 878, 154 Ill. Dec. at 657.) The court will allow this claim to proceed.

**C.     Integra's Request to Amend the First Amended Complaint**

Integra asks the court for "leave to amend its complaint where necessary." (Integra Opp. 15.) The court denies this request. Integra has already had an opportunity to amend its complaint and granting leave to amend for a second time would be futile. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("While the federal courts 'should freely give leave [to amend a pleading] when justice so requires' . . . a district court may deny leave for a variety of reasons, including . . . futility." (quoting FED. R. CIV. P. 15(a)(2))). Here, Integra cannot make any changes to the First Amended Complaint that would remove its negligence claims from the purview of the economic loss doctrine. At Integra's request, the court also clarifies that the dismissal of the claims in the original complaint was without prejudice; indeed, the court granted Integra leave to amend.

## CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Defendant APP's Motion to Dismiss [48] and Defendant Dr. Servatius' Motion to Dismiss [51]. Specifically, the court grants Defendants' motions to dismiss Integra's negligence-based claims (Counts III-IX) and denies Defendants' motions in all other respects.

ENTER:

Dated:  August 9, 2019

_____
REBECCA R. PALLMEYER
United States District Judge