**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **INTEGRA HEALTHCARE, S.C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 18 C 3589** |
| | ) | |
| **APP OF ILLINOIS HM, PLLC** | ) | **Judge Rebecca R. Pallmeyer** |
| **and AMBER SERVATIUS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Dr. Sachin Jain owns and operates Plaintiff Integra Healthcare, S.C., a corporation that provides physician staffing to hospitals and nursing homes. Defendant APP of Illinois HM, PLLC, is engaged in a similar business. Dr. Jain, who is employed by Integra, and Defendant Dr. Amber Servatius, who is employed by APP, both work as hospitalists at Vista Medical Center East (VMCE), a hospital in Waukegan, Illinois.[1] Dr. Servatius is also the medical director of APP's hospitalist team at VMCE. In this lawsuit, Integra alleges that APP, through Dr. Servatius, has interfered with Integra's contractual right to provide physician services at VMCE and to receive patient referrals from skilled nursing facilities. Integra has filed an emergency motion for a temporary restraining order "restraining Defendants [APP and Dr. Servatius] from treating patients that are supposed to be exclusively under [Integra's] care at" VMCE. (Pl.'s Mot. for TRO [59], 1.) For the following reasons, Integra's motion is denied.

## BACKGROUND

Integra filed this lawsuit on May 21, 2018 and filed a First Amended Complaint [40] on November 2, 2018. In the First Amended Complaint, Integra asserted claims for tortious interference with prospective economic advantage against Dr. Servatius and APP, as well as

---

[1]     A hospitalist is a physician who provides primary care to hospitalized patients.

several negligence-based claims against both Defendants. Defendants moved to dismiss for failure to state a claim [51]. While that motion was pending, on June 18, 2019, Integra filed this motion for a temporary restraining order (TRO) [59]. The court held two evidentiary hearings on Integra's motion for a TRO: one in August 2019 and one in October 2019. Meanwhile, on August 9, 2019, the court granted Defendants' motion to dismiss Integra's negligence-based claims and denied Defendants' motion to dismiss Integra's tortious interference claims. *See Integra HealthCare, S.C. v. APP of Illinois HM, PLLC*, No. 18 C 3589, 2019 WL 3766122, at *10 (N.D. Ill. Aug. 9, 2019). Integra's allegations are described in detail in the court's August 2019 order. For present purposes, the court repeats several basic facts from that order and recounts testimony from the August 2019 and October 2019 evidentiary hearings.

VMCE is part of a network called Vista Health Systems (Vista). (First Am. Compl. ¶¶ 10-11.) APP has an exclusive contract with Vista to provide hospitalist services for certain patients at VMCE—specifically, patients that are admitted into the hospital but do not have primary care physicians (hereinafter, Unassigned Patients). (*See id.* ¶ 20.) Despite this exclusive agreement, in November 2016, VMCE's Medical Executive Committee "granted [Dr.] Jain the right to see" Unassigned Patients once every two weeks. (*Id.* ¶ 21.) Nine months later, the Medical Executive Committee altered the arrangement and granted Dr. Jain the right to see such patients once every thirty-two days. (*Id.* ¶ 22.) Separate and apart from this arrangement, VMCE allows Dr. Jain to treat another set of patients at the hospital (hereinafter, Assigned Patients): those who are supposed to be exclusively under Dr. Jain's care according to contracts he has with other physicians and entities, including an agreement with Dr. Xavier Parreno. (*See, e.g.*, *id.* ¶¶ 26, 32, 34, 36; *see also* Dr. Jain Decl. in Supp. of Mot. for TRO ("Jain Decl.") [59-1], ¶ 13.)

Integra alleges that Defendants are intentionally interfering with Dr. Jain's right to see both types of patients. (*See* Second Am. Compl. ¶¶ 23, 26.) For example, according to Integra, Dr. Servatius at some point created schedules that permitted Dr. Jain to treat only seventy-five percent of the Unassigned Patients that he was entitled to treat. (*See id.* ¶ 23.) Integra also

alleges that "APP and/or [Dr.] Servatius directed and/or allowed other doctors from the hospitalist group to treat" Dr. Jain's Assigned Patients. (*Id.* ¶ 26; *see also* Jain Decl. ¶ 14.) Integra alleges that Defendants have continued to engage in this conduct even though Integra has asked them to stop and has asked VMCE to intervene. (*See* Second Am. Compl. ¶¶ 43-44; Jain Decl. ¶ 16.) Relatedly, Integra further alleges that it met with Defendants and the "VMCE administration" on May 8, 2019. (Jain Decl. ¶ 17.) According to Integra, VMCE "admonished the Defendants for their continued transgressions and instructed them to stop," but Defendants "continue to improperly treat [Dr. Jain's] patients." (*Id.*)

At the evidentiary hearing on October 4, 2019, Dr. Servatius testified that in the past, she took on the task of creating the call schedule for hospitalists at VMCE. (Oct. 4, 2019 Hrg. Tr. [83] 14:18-24.) Then, in September 2017, there was an occasion when Dr. Jain was removed from the call schedule and thus prevented from seeing patients. (*See id.* at 13:13-15; First Am. Compl. ¶ 24 (alleging that Dr. Servatius "took [Dr.] Jain off the call completely").) According to Dr. Servatius, the decision to remove Dr. Jain from the call schedule was not hers; rather, the assistant CEO of Vista instructed her to remove him. (*See* Oct. 4, 2019 Hrg. Tr. at 13:22.) Dr. Servatius testified that the incident "created such chaos" that she decided she "want[ed] nothing more [to do] with" creating the call schedule. (*Id.* at 14:1-5.) Accordingly, Dr. Servatius testified, she asked Vista to assume the responsibility, and Vista's medical staff now creates the call list for both Assigned and Unassigned Patients. (*See id.* at 14:6-25, 37:4-7.) Patti Kerkorian, VMCE's chief quality officer, similarly testified during the evidentiary hearing that it is Vista's medical staff who create the call schedule. (*See* Aug. 6, 2019 Hrg. Tr. [72], at 67:12-14.)

Dr. Servatius acknowledged in her testimony that as medical director of APP's hospitalist program, she is responsible to ensure that hospitalists "operate according to" Vista's call schedule. (Oct. 4, 2019 Hrg. Tr. at 12:3-7.) But that system is "imperfect," Dr. Servatius said; Dr. "mistakes do happen." Dr. Servatious herself "never allowed anybody to see [Dr. Jain's] patients. None of this is intentional." (*Id.* at 11:11-13; 12:17; 20:11-16, 21:12-20.) Significantly, she

testified that mistakes have gone in the other direction, as well; on occasion, Dr. Jain has mistakenly treated APP's patients. (*See id.* at 19:4-6 ("[T]here has been patients that were assigned to us that were supposed to be assigned to [Dr. Jain] and vice versa.").) Dr. Kenji Oyasu, who works for APP as an assistant director and as a physician at VMCE, gave similar testimony. (*See* Aug. 6, 2019 Hrg. Tr. at 107:22-25, 108:11-13, 115:6-18 (testifying that sometimes, patients are incorrectly assigned to APP when they should have been assigned to Dr. Jain; sometimes the reverse occurs; "it's not a perfect system"; and "[w]e do our best to establish who the primary care and who the admitting physician should be, and sometimes we just make mistakes").)

Both Dr. Servatius and Ben Youree, APP's regional vice president of operations, testified that when a patient is assigned to the wrong doctor, APP tries to remedy the situation quickly. (*See* Oct. 4, 2019 Hrg. Tr. at 12:18-21) (Dr. Servatius) ("[W]e have worked on a way to change [patients] as soon as we see that there is a discrepancy of which patient should be with which doctor."); Aug. 6, 2019 Hrg. Tr. at 92:23-24, 101:24-102:2 (Mr. Youree) (testifying that if APP begins treating a patient and then learns that she has a primary care physician, it "facilitate[s] the transfer of that patient back to the appropriate physician as quickly as possible").) Dr. Servatius, moreover, testified that she is taking specific measure to prevent future errors, such as "tap[ing] up signs that have all of Dr. Jain's physicians he covers for" and conducting "monthly team meetings" to remind hospitalists to double-check patient assignments. (Oct. 4, 2019 Hrg. Tr. at 23:3-13; *see also* Oct. 4, 2019 Hrg. Tr. at 24:21-22 (testifying that at the May 2019 meeting, "[w]e discussed ways to improve communication for the patients that are misassigned"); Aug. 6, 2019 Hrg. Tr. at 77:19-25 (similar testimony from Ms. Kerkorian concerning the May 2019 meeting).) But according to Dr. Servatius, she does not have "the ultimate authority" to resolve the issues with the patient assignment system because it is Vista's system, and "[w]e are just going by what we are told to do." (Oct. 4, 2019 Hrg. Tr. 25:4-7, 35:18-23.) Dr. Servatius notes, further, that she has no financial incentive to steal Dr. Jain's patients because she is paid a flat per-shift salary,

regardless of how many patients she treats in a single shift, . (*See* Oct. 4, 2019 Hrg. Tr. at 19:17-20:10, 21:23-25.)  Mr. Youree similarly testified that APP is "paid a fixed monthly stipend" that is not based on patient volume.  (Aug. 6, 2019 Hrg. Tr. 101:14-19.)

Dr. Jain offered testimony during the evidentiary hearing, as well.  Among other things, he testified that according to an informal log that he kept during a six-week period after November 2016, APP "saw approximately 30 of the patients that were supposed to be admitted to [him]." (Aug. 6, 2019 Hrg. Tr. at 29:1-22.)  Ms. Kerkorian, for her part, testified that between the May 2019 meeting and August 2019, only about five patients were assigned to APP that should have been assigned to Dr. Jain.  (*See id.* at 78:6-13.)  According to Dr. Oyasu's testimony, VMCE admits between 135 to 160 patients per day.  (*See id.* at 109:3-4.)

## DISCUSSION

Integra asks the court for a TRO "restraining Defendants APP and [Dr. Servatius] from treating patients that are supposed to be exclusively under its care" VMCE.  (Pl.'s Mot. 1.) Integra also requests "a preliminary injunction thereafter." *Id.*  Because Defendants received notice of Integra's motion, the court can properly treat it as one for a preliminary injunction.  *See GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 371 n.11 (7th Cir. 2019) (citing *Levas & Levas v. Vill. of Antioch*, 684 F.2d 446, 448 (7th Cir. 1982)).

A preliminary injunction is "an extraordinary remedy."  *Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017) (citing *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States, Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) (the power to issue a preliminary injunction is "never to be indulged in except in a case clearly demanding it")).  To obtain a preliminary injunction, "the moving party must establish that (1) without preliminary relief, it will suffer irreparable harm before final resolution of its claims; (2) legal remedies are inadequate; and (3) its claim has some likelihood of success on the merits." *Proft v. Raoul*, 944 F.3d 686, 693 (7th Cir. 2019) (internal quotation marks omitted).  If the moving party "fails to meet any of these threshold requirements, the court must deny the injunction."

*GEFT Outdoors*, 922 F.3d at 364 (internal quotation marks omitted); *see also Proft*, 944 F.3d at 693 ("If the moving party fails to make this [threshold] showing, the court does not have to proceed to balancing the resulting harms.").  The court denies Integra's request for a preliminary injunction because it has not established that legal remedies are inadequate, nor that it will suffer irreparable harm without preliminary relief.

## A.    Inadequacy of Legal Remedies

To show that an award of legal remedies (*i.e.*, money damages) would be inadequate, Integra need not show that it would be "wholly ineffectual."  *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984).  Rather, it must show that a damages award would be "seriously deficient as a remedy for the harm suffered."  *Id.*  In *Roland*, the Seventh Circuit stated that a damages remedy can be inadequate in four circumstances, including when "[t]he nature of the plaintiff's loss may make damages very difficult to calculate."  *Id.*  Integra argues that its damages "may be difficult to calculate" because (1) "Integra has already lost business relationships with at least one other healthcare provider and is in danger of losing more," and (2) Integra and Dr. Jain have suffered, and will continue to suffer, damage to their "reputation and goodwill in the medical community."  (Pl.'s Mem. in Supp. of TRO ("Pl.'s Mem.") [61], 4-5; *see also id.* at 4 (citing *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304-05 (7th Cir. 2003), for the proposition that it is "not practicable to calculate damages to remedy" the loss of a business relationship).)

Integra's argument is unpersuasive, first, because its motion for a preliminary injunction concerns Defendants' alleged interference with Dr. Jain's patient assignments at VMCE by manipulating or ignoring the call schedule and by disregarding other VMCE rules concerning patient assignment.  This motion does not concern Integra's allegations that Dr. Servatius made phone calls to third parties with whom Dr. Jain has exclusive patient treatment contracts—and made disparaging remarks about Dr. Jain during those phone calls—in hopes of persuading them to cancel the contracts.  Indeed, Integra does not ask the court to enjoin Dr. Servatius from

engaging in the latter form of behavior. At the evidentiary hearing, moreover, Dr. Jain testified that Integra lost its business relationship with Dr. Parreno because "APP called him and . . . he switched the contract to them"—not because APP interfered with Dr. Jain's ability to treat Dr. Parreno's patients when they arrived at VMCE. (Aug. 6, 2019 Hrg. Tr. at 18:5-16.) Integra, therefore, has not shown that the conduct at issue in its motion for a preliminary injunction caused it to lose any business relationships. That said, Dr. Jain did testify at the evidentiary hearing that Integra's goodwill and reputation suffer when Defendants interfere with his ability to treat Assigned Patients. (*See id.* at 27:24-28:5.) For example, the patients, and the third parties with whom Dr. Jain has contracts to treat those patients, are left wondering *why* Dr. Jain did not treat the patients he was supposed to treat. (*See id.*) To be sure, damage to goodwill and reputation can be "virtually impossible" to quantify. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 902 (7th Cir. 2001). But as Defendants emphasize, the only form of relief Integra sought in its original and First Amended Complaint was monetary damages—and in its motion for a preliminary injunction, Integra does not argue that Defendants are engaging in conduct that differs from the conduct alleged in the original and First Amended Complaints. (*See* Compl. [1-1], 10-13; First Am. Compl. 7, 9-12, 14-15, 17-18; *see* Defs.' Opp. to Mot. for TRO [65], 6.) The fact that Integra is seeking injunctive relief for the first time through this motion—which Integra filed more than a year after it initiated this lawsuit—undermines its contention that an award of money damages would be "seriously deficient as a remedy for the harm suffered." *Roland Mach.*, 749 F.2d at 386.

To the extent Integra is arguing that it "may be difficult to calculate" its monetary damages, the allegations and evidence show otherwise. (Pl.'s Mem. 4.) Integra alleges that "[w]hen APP doctors saw patients that were supposed to be under [Dr.] Jain's care, APP would receive the revenues instead of Integra." (First Am. Compl. ¶ 27.) During the evidentiary hearing, Dr. Jain conceded that "[t]he hospital has records of everybody [that has] come in." (Aug. 6, 2019 Hrg. Tr. 21:13-15.) Integra has identified no reason why it could not use VMCE's records to calculate the income it lost when Defendants allegedly prevented Dr. Jain from treating his patients at

VMCE.

For these reasons, the court concludes that Integra has not established that legal remedies are inadequate. *See Proft*, 944 F.3d at 693. Integra, therefore, has failed to satisfy a threshold requirement for obtaining a preliminary injunction, and the court must deny its motion. *See GEFT Outdoors*, 922 F.3d at 364.

**B.    Irreparable Harm**

Even if Integra had established that legal remedies are inadequate, the court would be deny this motion because Integra has not shown that it will suffer irreparable harm without injunctive relief. According to Integra, it has established that "Defendants' [tortious] conduct has irreparably damaged its business" and is "ongoing." (Pl.'s Mem. 5) "It follows," Integra urges, that it has satisfied the irreparable harm requirement. (*Id.*) Integra's conclusory and undeveloped argument is insufficient. First, for reasons the court has already discussed, Integra has not established that Defendants' conduct vis-à-vis the call schedule and VMCE's patient assignment rules caused Integra to lose any business relationships. Second, Integra's argument that it will suffer irreparable harm is premised on the contention that Defendants' conduct is intentional. The testimony at the evidentiary hearing, however, overwhelmingly demonstrated that Defendants' alleged interference with Dr. Jain's ability to treat patients is not intentional, but rather is the result of an imperfect or inconsistent patient assignment system at VMCE. Dr. Servatius and representatives of APP testified that they are aware of Dr. Jain's concerns; they know they have an obligation to ensure that patients are appropriately assigned to Dr. Jain, both under his agreement with VMCE concerning Unassigned Patients and under his contracts with third parties; they are trying to comply with that obligation; and sometimes they make mistakes. In addition, Ms. Kerkorian, the chief quality officer at VMCE, testified that of the 135-plus patients admitted to VMCE each day, only about five were mistakenly assigned to APP instead of Dr. Jain between the May 2019 meeting and the August 2019 evidentiary hearing. Accepting as true Dr. Jain's testimony that APP in fact treated thirty of his patients during an unspecified six-week period

before May 2019, the situation is improving. Based on this testimony, the court concludes that Integra has not established it will suffer irreparable harm if the court does not enter the injunction.

Additionally, from the court's perspective, Defendants are already trying to comply with their obligations; the alleged harm occurs when they make mistakes; and those mistakes could occur regardless of whether the court enters the injunction. In this vein, the court notes that Vista creates the call schedule and has ultimate control over the patient assignment system—not APP or Dr. Servatius. For reasons Integra has refused to explain, however, Vista is not a party to this action. As the court stated at the October 4, 2019 hearing, it suspects that it cannot "accord relief in this case without the involvement of Vista." (Oct. 4, 2019 Hrg. Tr. at 42:20-21.) At the end of the hearing, the court asked the parties to submit briefs addressing whether Federal Rule of Civil Procedure 19 requires dismissal of this case on the ground that Vista is an indispensable party. The parties have submitted their briefs [84, 85], but Integra's is wholly inadequate. The court will therefore reserve ruling on the Rule 19 issue. For present purposes, the court denies Integra's motion for a preliminary injunction because it has failed to meet at least two threshold requirements for obtaining that extraordinary relief.

## CONCLUSION

For the foregoing reasons, the court denies Plaintiff's Emergency Motion for Temporary Restraining Order Pursuant to Federal Rule of Civil Procedure 65(b) [59].

ENTER:

Dated: February 7, 2020

_____
REBECCA R. PALLMEYER
United States District Judge